IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA PITTS, | ) | CASE NO. 1:10-CV-870 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Rhonda Pitts's ("Plaintiff" or "Pitts") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On February 24, 2006, Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income alleging that she became disabled on June 1, 2003, due to suffering from seizures, headaches, and depression (Tr. 295-99, 320-33, 811-13). Plaintiff's date last insured for purposes of her Disability Benefits application was December 31,

2010 (Tr. 317).[1]

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 265-66, 814-21).  Plaintiff timely requested and was granted an administrative hearing (Tr. 277-81).  On October 21, 2008, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Stephen Hanekamp (the "ALJ" or "ALJ Hanekamp") (Tr. 828-76).  Testifying at the hearing were Plaintiff and Mr. Kevin Yi, the vocational expert (Tr. 828-76).  At the conclusion of the hearing, ALJ Hanekamp agreed to leave the record open for a period of seven days in order to allow Plaintiff's counsel to submit additional documents for inclusion in the record (Tr. 875-76).

The ALJ issued a written decision on December 2, 2008, in which he applied the five-step sequential evaluation,[2] and determined that Plaintiff retained the residual functional capacity

---

[1]Plaintiff was previously awarded benefits for a closed period beginning August 1, 1998 through March 30, 2000, due to her epilepsy (Tr. 255-60).

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.),

2

("RFC") to perform a limited range of light work existing in significant numbers in the national economy and, therefore, was not disabled (Tr. 22-32).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council (Tr. 18, 822-27).  On February 25, 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 12-14).  Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff, born on December 18, 1968, was thirty-nine years old at the time of the hearing, and considered a younger individual for Social Security purposes (Tr. 16).  She completed the eleventh grade of high school and has past experience working as a home health aide, housekeeper, small product assembler (Tr. 849-50).  Pitts continued to work as a home health aide on a part-time basis after her alleged onset date until February of 2006 (Tr. 310).

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

---

she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### III. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. **ANALYSIS**

After completing a review of the record, ALJ Stephen Hanekamp determined that Pitts was not disabled under the Social Security regulations (Tr. 22-32). At step one of the sequential evaluation analysis, the ALJ found that Pitts had not engaged in substantial gainful activity since

4

June 1, 2003, although she continued to work after her alleged onset date (Tr. 24).  At step two, ALJ Hanekamp ruled that Plaintiff suffered from the following severe impairments: seizure disorder, migraine headache disorder, hypothyroidism, adjustment disorder with mixed disturbance of emotions and conduct, and borderline intellectual functioning (Tr. 24).  However, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25-26).  Before moving to step four, the ALJ found that Pitts retained the RFC:

> [T]o perform a range of light work . . . . Specifically, she can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently[.] She can sit for six hours and stand and/or walk for six hours in a normal workday.  She must take standard seizure precautions.  She cannot drive vocationally or operate heavy machinery.  She cannot bathe or swim unsupervised.  She must avoid exposure to sharp moving objects and heights.  She cannot ambulate on uneven slippery surfaces.  She is limited to simple-to-moderately complex routine tasks.

(Tr. 26).  At step four, ALJ Hanekamp determined that Plaintiff's RFC permitted her to perform her past relevant work as a small products assembler (Tr. 30-31).  Alternatively, the ALJ ruled that Plaintiff's RFC allowed her to perform other jobs which existed in significant numbers in the national economy (Tr. 31-32).  Specifically, the ALJ held that Pitts could work as a sales attendant and a food and drink order clerk, and therefore, was not disabled (Tr. 31).

Plaintiff challenges the ALJ's decision on several grounds.  First, Pitts argues that ALJ Hanekamp's step four finding that Pitts could return to her past relevant work as a small products assembler was faulty.  Second, Pitts sets forth an array of arguments challenging the ALJ's reliance upon the testimony of the VE.  Third, Plaintiff avers that inaudible portions of the hearing transcript deprived her of the right to examine the "evidentiary basis for the ALJ's reliance on the [VE's] testimony" (Pl.'s Br. at 14).  Fourth, Plaintiff contests the ALJ's assessment of her educational

background.  Fifth, Pitts maintains that ALJ Hanekamp erroneously evaluated her mental condition.

Lastly, Plaintiff claims that substantial evidence does not support the ALJ's credibility finding.  The

Court will address Plaintiff's arguments in order of importance.

### A.  ALJ's Step Four Finding

At step four, the ALJ found that Plaintiff could return to her past job as a small products

assembler (Tr. 31).  Plaintiff challenged this assertion claiming that her past experience working as

a small products assembler did not satisfy the Social Security regulation's definition of past relevant

work.  Defendant concedes this point.  Therefore, there is no need for the Court to resolve this issue.

The Court will proceed to determine whether the ALJ's decision is valid on other grounds.

### B.  ALJ Hanekamp's Reliance Upon The VE's Testimony

Pitts asserts that the VE's testimony did not provide substantial evidence to support the

ALJ's decision.  She purports that the VE's testimony was flawed in many respects, therefore,

precluding it from forming the basis of ALJ Hanekamp's ruling at step five.  During the hearing, the

ALJ posed a hypothetical question to the VE describing a person with the same RFC as Pitts (Tr.

851).  The ALJ also instructed the VE to only identify jobs with Specific Vocational Preparation

("SVP") and General Education Development ("GED") ratings of 3, 2, and 1 (Tr. 853).  In response,

the VE identified three specific jobs which such an individual could perform: 1) small product

assembler (DOT # 706.684-022); 2) sales attendant (DOT # 299.677-010); and 3) food and drink

order clerk (DOT # 209.567-014) (Tr. 850-55).[3]  Pitts contests the VE's finding on several grounds.

To begin, Pitts maintains that the VE's identification of the small product assembler position

was erroneous because the position's occupational requirements did not coincide with the ALJ's

---

[3]The "DOT" refers to the Dictionary of Occupational Titles.

6

hypothetical.  During Plaintiff's cross-examination of  Mr. Yi, he acknowledged that he could not verify the GED level of the small product assembler position which he had identified (Tr. 870). Rather, he responded that it was an "unskilled job in the light exertion level." (Tr. 870).  Defendant failed to directly address this argument raised by Plaintiff, instead contending that the ALJ's step five determination was not based on the VE's reference to the small product assembler position.

While it appears that the duties of a small product assembler could presumably fall within a GED level between one and three, the VE was unable to definitively state whether the position met this requirement.  Defendant argues that the ALJ did not rely upon the VE's identification of the small product assembler position during his step five analysis.  After reviewing the ALJ's written opinion the Court agrees with Defendant.  Thus, to the extent that ALJ Hanekamp referenced the small product assembler position, he did so in determining whether Plaintiff could return to her prior employment.  Accordingly, any flaws identified with respect to this position would only nullify the ALJ's step four finding.  The ALJ's opinion makes clear that he asked the VE to identify other positions in the event that Plaintiff's work as a small products assembler did not constitute as past relevant work. Because the parties have already identified ALJ Hanekamp's step four finding as faulty, any additional errors attributed to this finding are moot.

Next, Plaintiff challenges the ALJ's reliance upon the VE's testimony regarding the number of jobs available which Plaintiff could perform.  The gravamen of Plaintiff's argument is that the VE's iteration of the number of jobs available was not based on any one of the particular jobs which the VE identified – small products assembler, order clerk, or sales attendant–but, instead were based on figures relating to groups of jobs which included jobs that were beyond Plaintiff's residual capacity.

Once it is determined that a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity which exists in the national economy.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).  "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs.  *See id*.  However, the hypothetical question posed to a vocational expert must accurately portray the claimant's physical and mental state.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

The vocational expert's testimony may assist the ALJ in determining whether there is work which Plaintiff can perform existing in the national economy in significant numbers in the region in which Plaintiff lives or in several regions in the country.  "It is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony."  *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).  The Sixth Circuit has indicated that there is no bright line delineating a significant number from an insignificant number, however, the court noted that the question "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *See id.* (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).  In making this determination, the ALJ should consider: "the level of [the] claimant's disability; the reliability of the vocational expert's testimony; the reliability of the

8

claimant's testimony; the distance [the] claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs; [and] the types and availability of such work[.]" *Hall*, 837 F.2d at 275.

In the instant matter, the VE identified three jobs in response to the ALJ's hypothetical question describing an individual with Plaintiff's RFC: 1) a small products assembler; 2) a sales attendant; and 3) a food and drink order clerk (Tr. 851-55).  The VE went on to state that such jobs existed in Ohio in significant numbers, 70,000, 40,000, and 100,000 respectively.  Upon cross-examination, the VE acknowledged that these job incidence figures were based on occupational statistical groups rather than on any one individual job title he identified (Tr. 858).  Pitts therefore argues that the ALJ should not have relied on the VE's testimony regarding the number of jobs available to Pitts because some of the jobs included in the occupational statistical groups on which the VE's numbers relied, did not coincide with Plaintiff's RFC.

Pitts's argument is based upon information listed in the Occupational Employment Survey ("OES") available through a program called Job Browser Pro by SkillTRAN.  Post-hearing, she submitted evidence from the OES to the ALJ, in support of her argument that the statistical occupational groups, on which Plaintiff alleges that the VE's job incidence figures were based, included jobs which Plaintiff would not be capable of performing.[4]  For example, Plaintiff claimed that the job incidence figure recited by the VE for the order clerk position, was based upon the availability of jobs in a statistical group comprised of eleven occupations, only one of which was the order clerk position.  Pitts argues that the remaining ten occupations in the group all exceeded

---

[4]The ALJ agreed to keep the record open for a period of seven days following the hearing to permit submission of these records (Tr. 876).

her RFC because they required an SVP level greater than two.  Plaintiff asserts that the VE's reported job incidence numbers for the sales attendant position suffer from the same flaw. Accordingly, Pitts claims that the VE's testimony could not constitute substantial evidence for a finding that work existed in substantial numbers because the basis of the VE's figures were skewed.

While the Court concedes that Plaintiff's argument has facial appeal, it declines to rule in Plaintiff's favor on this issue.  ALJ Hanekamp listed several legitimate reasons for crediting the testimony of the VE, Mr. Yi, and the record supports his decision to do so.  Although the VE confirmed that the Job Browser Pro program was a valid source of information on which he relied, Mr. Yi also stated that he relied upon other sources (Tr. 866).    Thus, his testimony was not based solely upon the information listed in the OES.  Because Mr. Yi's testimony was based upon numerous sources of information, Plaintiff's attempt to undermine the VE's testimony on the basis that it was inconsistent with the figures listed in the OES, is significantly weakened. To accept Plaintiff's contentions, the Court would have to determine that the VE's job incidence numbers were based solely upon the figures listed in the OES.  The Court declines to do so because Mr. Yi repeatedly stated that his job incidence figures were based on several sources of information. Plaintiff has not pointed to any case law, rule or regulation requiring the VE's testimony to be consistent with the OES.[5]

---

[5]Each of the parties briefs referenced the ALJ's duties under Social Security Ruling 00-4p.  The rule states that before an ALJ may rely on information from the VE, the ALJ must identify whether the VE's testimony conflicts with information listed in the DOT, and if so, explain the resolution of such conflicts in his/her written decision.  SSR 00-4p.  In this case, ALJ Hanekamp confirmed that Mr. Yi's description of the occupations were consistent with the descriptions listed in the DOT (Tr. 855).  Pitts cited to *Cunningham ex rel. v. Astrue*, 360 F. App'x 606 (6th Cir. 2010), to argue that the DOT is partially obsolete, and that it is proper to rely on more current vocational information (Pl.'s Reply Br. at 5).  Although this case acknowledged that some of the information listed in the DOT was outdated, its ruling was based

Second, during Plaintiff's cross-examination of the VE, Mr. Yi explained that reports portraying occupational information are used for varying reasons.  Mr. Yi commented that the purpose of the OES report was to determine the salaries of jobs within a particular group of occupations, and not for the purpose of job analysis (Tr. 862).  Therefore, it was proper for the ALJ to conclude that the OES report was not intended to be used for the purpose for which Plaintiff asserts.

The Court notes that the role of a vocational expert is to assist the ALJ in rendering a decision at steps four and five of the sequential  evaluation process.  The means by which one determines the number of jobs existing in significant numbers is not an exact science.  Accordingly, ALJ's may implore the assistance of vocational experts in order to make such findings.  *See Varley, 820 F.2d at 779*.  In the case *sub judice*, Plaintiff's attorney chose not to challenge Mr. Yi's capabilities to testify as a vocational expert (Tr. 849).  While Plaintiff questioned the VE regarding his calculation of the availability of jobs, Plaintiff did not challenge Mr. Yi's qualifications.  Additionally, Plaintiff failed to further probe the VE regarding the other sources he relied upon in calculating the number of jobs available for each position he identified (Tr. 866).[6]  This is not a case like others where remand was proper due to the plaintiff's inability to question the VE regarding the

---

on a conflict regarding the DOT's description of two particular jobs.  *Cunningham, 360 F. App'x at 614-16*.  It found that the VE's "dependence on the DOT listings alone [did] not warrant a presumption of reliability" given that there was evidence that the DOT's information was outdated.  *Id.* at 616. However, the Court did not seek to entirely invalidate the sufficiency of the information listed in the DOT.  *Id. Cunningham* is not controlling in this case because although Mr. Yi stated that his testimony was consistent with the DOT, he acknowledged that his job incidence numbers were based on several sources, including the Bureau of Labor Statistics and occupational market information (Tr. 855).

[6]Mr. Yi indicated that his numbers were based on figures from the Bureau of Labor Statistics and occupational market information (Tr. 855).

basis of his findings. *See Lynch v. Astrue*, 358 F. App'x 83 (11th Cir. 2009) (remand proper due to ALJ's refusal to allow the claimant's attorney the opportunity to question the VE's methodology in calculating the number of jobs available); *see also King v. Comm'r of Soc. Sec.*, No. 7:06cv490, 2007 WL 2471443 (W.D. Va. Aug. 24, 2007) (remand proper because the ALJ requested further information from the VE regarding his calculation of jobs, but rendered a decision prior to receiving such information). Instead, in this case, Plaintiff's counsel had ample opportunity to examine the VE and determine the basis of his opinions. Despite Plaintiff's criticisms of the VE's testimony, the ALJ found that the testimony was credible. ALJ Hanekamp explained that he was crediting Mr. Yi's testimony because it was based on the VE's professional experience and was generally consistent with the DOT. Both because the ALJ stated valid reasons for crediting the VE and because there is a legitimate basis to reject Plaintiff's characterization of Mr. Yi's findings, the Court finds that the VE's testimony provided substantial evidence to support the ALJ's step five finding.

Lastly, Pitts maintains that the ALJ's decision on this issue is flawed because he misinterpreted the evidence submitted by Pitts after the hearing. On the final page of his written decision, ALJ Hanekamp commented that Plaintiff's own evidence supported a finding that there were jobs existing in significant numbers for positions as food and drink order clerks and sales attendants (Tr. 32). Based on Pitts's post-hearing submissions, the ALJ concluded that there were 1,840 food and drink order clerk positions and 30,000 sales attendant positions in Northeastern Ohio (Tr. 32). Plaintiff is correct that ALJ Hanekamp mischaracterized her evidence. The numbers which the ALJ recited were from the OES reports Plaintiff submitted to the ALJ post-hearing to further question the VE's findings (Tr. 343-419). Thus, the job incidence numbers listed by the ALJ were figures reported based on occupational groups, rather than on any one particular job. This was the

12

key basis of Plaintiff's objection to the VE's testimony.   Although the ALJ's articulation of the evidence here is clearly erroneous, it does not render the ALJ's acceptance of the VE's testimony improper.  As detailed in the Court's discussion above, the ALJ was nonetheless entitled to credit Mr. Yi's opinions.

### C.  Plaintiff's Mental Impairments

After step three of the sequential evaluation process, the ALJ must determine the claimant's residual functional capacity.  The RFC "is the individual's *maximum* remaining ability to perform sustained work activities in an ordinary work setting on a *regular and continuing* basis" in consideration of the individual's medically determinable impairments, including any related symptoms.  SSR 96-9p (emphasis in original).  "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."  *Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. 2009) citing 20 C.F.R. §§ 404.1546(c), 416.946(c).*  Pitts argues that ALJ Hanekamp improperly assessed her mental residual functional capacity.

### 1.  Treating Physician's Opinions

Plaintiff asserts that the ALJ improperly rejected the medical opinions of her treating psychiatrist, Dr. K. Srinivasa Rao, and her treating internist, Dr. Jose Mendoza.  Both physicians opined that Plaintiff suffered from moderate limitations in several areas of mental functioning (Tr. 629, 770).  Pitts notes that both doctors opined she suffered from a moderate limitation in interacting with the public, coworkers and supervisors.

When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating sources.  *See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).*  The treating source doctrine

13

recognizes that  physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(d)(2).  Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).

A treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record.  *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table).  When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion.  *Wilson*, 378 F.3d at 544.  These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the physician's specialization.  20 C.F.R. § 404.1527(d)(2)-(5).  The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion.  20 C.F.R. § 404.1527(d).  Regardless of how much weight is given to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled.  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

In applying this doctrine to the instant case, the Court finds that the ALJ properly weighed the opinions of Drs. Rao and Mendoza.  ALJ Hanekamp discussed Dr. Rao's treatment of Plaintiff in detail (Tr. 28-30).  The critical medical record in contention regarding Dr. Rao was his assessment

14

of Plaintiff completed in May of 2007 (Tr. 629-30).  In it, Dr. Rao opined that Plaintiff was

moderately limited in all but two areas of mental functioning.[7]  The ALJ acknowledged Dr. Rao's

findings, but partially discredited them because Dr. Rao's findings were inconsistent with the other

substantial evidence in the record.  ALJ Hanekamp explained that Plaintiff's "wide range of daily

activities [and] the fact that she worked for a significant period after her onset date as a home health

aide taking care of other people" undermined Dr. Rao's opinion that Plaintiff suffered from

significant mental limitations (Tr. 30).  For example, Dr. Rao opined that Pitts was moderately

limited in her ability to maintain attention and concentration, make simple work-related decisions,

and interacting with the public (Tr. 629).  Yet, Plaintiff's ability to maintain employment, especially

in a field specializing in rendering assistance to others, and her ability to maintain a routine social

life – i.e. playing pool, maintaining a relationship with her boyfriend, shopping and interacting with

family–reflected that her limitations may not have been as severe as Dr. Rao believed.  Plaintiff

argues that her position as a home health aide has no bearing on whether she suffered from a

moderate limitation in social functioning.  Contrary to Plaintiff's arguments, these factors relate

directly to her limitations in social functioning.  Her behavior demonstrates that she retained the

ability to sufficiently manage social interactions with others.  Pitts's work required her to interact

with clients and supervisors.  Given that Dr. Rao's opinion was contradicted by other credible

evidence in the record, it was reasonable for the ALJ to discount his findings.  A treating source's

opinion is not entitled to controlling weight when it conflicts with the substantial evidence in the

record.  *See Miller*, 1991 WL 229979, at *2.  ALJ Hanekamp found that Dr. Rao's opinion differed

greatly from the evidence in the record.  The ALJ's explanation of his decision satisfied the "good

_____

[7]Dr. Rao found that Pitts was markedly impaired in the remaining two areas.

15

reasons" requirement.  Accordingly, the Court finds that ALJ Hanekamp did not err in his treatment of Dr. Rao's opinions.

With regard to Dr. Mendoza, the ALJ was equally entitled to discredit his findings.  Dr. Mendoza examined Pitts's mental functional capacity in September of 2008 (Tr. 770).  During this examination, Dr. Mendoza opined that Pitts suffered from moderate limitations in 17 out of 20 areas of mental functioning (Tr. 770).[8]  Dr. Mendoza also commented that Plaintiff suffered from seizures and had other physical restrictions on her ability to work (Tr. 771-72).  Pitts only challenges the ALJ's treatment of Dr. Mendoza's opinions regarding Plaintiff's mental capacity.  Thus, the Court limits its review to this issue.  The ALJ gave little weight to Dr. Mendoza's findings explaining that his opinions regarding Plaintiff's mental state were not entitled to deference because Dr. Mendoza was not a psychologist.

The Social Security Regulations dictate that an ALJ may "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(d)(5).  However, this regulation does not necessarily condone the complete rejection of a medical source simply because the medical advice offered exceeds his or her area of expertise.  *See Doud v. Comm'r of Soc. Sec.*, 314 F. Supp.2d 680 (E.D. Mich. 2003) (ALJ erred by rejecting treating physician's opinion regarding the claimant's mental state even though the physician was not a mental health specialist).  In the instant case, ALJ Hanekamp evaluated Dr. Mendoza's findings, and determined that they were only deserving of little weight because they contemplated matters beyond Dr. Mendoza's specialty.  The ALJ's express

---

[8]Dr. Mendoza remarked that Pitts was not significantly limited in the remaining three areas.

language indicates that he did not completely discard Dr. Mendoza's findings simply because he was not a psychologist.  ALJ Hanekamp's decision to attribute little weight to Dr. Mendoza's opinion was appropriate, as the regulations advise the ALJ to consider a treating physician's specialty when considering how much weight to afford the opinion.  20 C.F.R. § 404.1527(d)(2) & (d)(5); *see also Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).

ALJ Hanekamp also noted that he was limiting the weight of Drs. Rao's and Mendoza's opinions because they appeared to be based, at least in part, upon Plaintiff's self-complaints regarding the frequency of her seizures.  The ALJ's decision referred to inconsistencies in Plaintiff's reported number of seizures.  For instance, on April 7, 2006, Pitts told Dr. Mendoza that she continued to suffer seizures in the evening time (Tr. 754).  Yet, four days later, she informed her treating physician, Dr. Norman Sese, that she had not suffered any seizures since her last visit in March (Tr. 615).  Similarly, on December 15, 2006, she reported to Dr. Rao that despite treatment, she continued to suffer from seizures (Tr. 650).  Yet, Dr. Sese's treatment notes dated December 26, 2006, indicate that Pitts's medications were working well and that she was not suffering from migraines or seizures (Tr. 604).  Because the ALJ found inconsistencies in the information which Plaintiff supplied to her treating physicians, he determined that these opinions should be given limited weight as they were dependent upon Plaintiff's self-reports of seizures.  While Plaintiff argues that the extent of her seizures was not relevant to an assessment of her mental residual functional capacity, the mere fact that these doctors commented upon her seizure disorder reveals that it played some part in their analysis of her overall health.  Thus, the Court finds that ALJ Hanekamp did not err in his treatment of the medical opinions in the record.

## 2.  Mental RFC

Plaintiff also argues that ALJ Hanekamp's assessment of her mental RFC is flawed because it was not based on any medical opinion.  In articulating Plaintiff's RFC, the ALJ limited Plaintiff to  "simple-to-moderately complex routine tasks" (Tr. 26).  The Social Security regulations place the burden of determining a claimant's RFC squarely within the purview of the ALJ.  20 C.F.R. § 416.946(c).   "[T]he ALJ is charged with evaluating several factors in determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony."  *Henderson v. Comm'r of Soc. Sec.*, No. 1:08cv2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (Nugent, J.).  There is no requirement that the ALJ's RFC finding be based on the medical opinion of a physician.  *See* 20 C.F.R. § 404.1545(a)(3).  Nor is there any requirement that the ALJ seek medical expert testimony before establishing the claimant's RFC, although the ALJ has discretion to employ the use of a medical expert or to seek the opinion of a consultative examiner.  *See Foster,* 279 F.3d at 355; *see also* 20 C.F.R. § 404.1517.   Thus, an ALJ "does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence" when determining the claimant's RFC.  *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  Plaintiff admits that there is no absolute rule which requires an ALJ to rely upon the opinion of a medical expert in rendering the claimant's RFC.  Based on the foregoing case law, the Court finds that Plaintiff has failed to articulate any error committed by the ALJ, as the ALJ had no obligation to base his RFC finding on any one medical opinion.

### D.  Plaintiff's Remaining Arguments

The balance of Plaintiff's arguments appear to be secondary to her claims addressed above.  Plaintiff purports that remand was warranted to correct several errors in the ALJ's opinion.

18

Plaintiff's method of attacking the ALJ's opinion can be described as adopting the "kitchen sink" approach, as many of the arguments Plaintiff makes amount to futile objections.  Because the Court concludes that none of these residual arguments merit remand, the Court will only briefly address these issues.

### 1.  Plaintiff's Credibility

Credibility determinations are the prerogative of the ALJ.  The Social Security regulations set forth the criteria an ALJ should evaluate when assessing a claimant's credibility.  20 C.F.R. § 416.929(c)(3)(i)-(vii).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Yet, the ALJ must clearly state his reasons when rejecting a claimant's complaints as incredible.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (*citing Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

Plaintiff raised four concerns regarding ALJ Hanekamp's credibility finding.  First, Plaintiff asserts that the ALJ should not have criticized her for not being able to explain why she asserted June 1, 2003, as her alleged onset date, as Plaintiff has been diagnosed with borderline intellectual functioning.  ALJ Hanekamp cited numerous legitimate reasons for discounting Plaintiff's credibility.  These reasons ranged from the inconsistent statements Plaintiff made to different physicians to her ability to maintain employment after her onset date.  The ALJ's written decision only made brief mention of Plaintiff's inability to explain the basis of the selection of her onset date

(Tr. 29).  His consideration of this factor was *de minimis*, and was not the determinative factor behind his credibility finding.

Next, Plaintiff argues that the ALJ's statement that Plaintiff's "limitations d[id] not preclude all levels of basic work-related activities" stated an incorrect legal standard of the ALJ's duty at step four and five of the sequential evaluation process.[9]  Plaintiff's argument results from a misreading of ALJ's opinion (Tr. 30).  The ALJ made this statement while discussing his RFC finding.  A reading of the full paragraph in which the sentence is found reveals such.  It was offered prior to the start of his step four or five analysis.  Accordingly, Plaintiff has not identified any error in this respect.

Pitts further contends that ALJ Hanekamp improperly found that her activities of daily living supported her ability to perform full-time work.  Plaintiff cites *Cohen v. Sec'y of Dep't of Health & Human Servs.*, in support of her argument.  964 F.2d 524, 531 (6th Cir. 1992).  In *Cohen*, the Sixth Circuit held that a claimant's ability to successfully attend law school on a part-time basis did not provide a substantial basis for the ALJ to find that she retained the RFC to perform full-time work.  *Id.*  The facts in the instant case are significantly distinguishable.  *Cohen* centered on the claimant's ability to complete law school classes while claiming that she suffered from a disability.  This is not the issue here.  ALJ Hanekamp focused on several aspects of Pitts's life both social and personal in concluding that her daily activities tended to show that she was capable of performing substantial gainful activity.  He noted that in her personal life, Pitts lived alone and managed all of her own personal needs and maintained relationships with her family including her boyfriend.  From

---

[9]Plaintiff incorrectly identified this statement as appearing on page 29 of the transcript. The statement actually appears on page 30 of the transcript.

a social standpoint, Pitts actively played billiards, sewed, crocheted and shopped (Tr. 29-30). Moreover, she was able to maintain employment even after her alleged onset date.  It was expedient for the ALJ to examine these activities in evaluating the severity of Plaintiff's claims.  *See Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986).

Plaintiff's final objection to ALJ Hanekamp's credibility finding attacks the ALJ's treatment of the opinions offered by Plaintiff's treating physicians.  As previously discussed in the Court's opinion above, the ALJ's assessment of Drs. Rao's and Mendoza's opinions was not erroneous.

## 2. **Plaintiff's Education**

The ALJ's hypothetical question should be based upon an individual with the claimant's RFC, age, education and work experience.  *See* 20 C.F.R. § 416.920(g).  Pitts attended special education classes in school and withdrew from high school in the eleventh grade after becoming pregnant (Tr. 833).  In his hypothetical question posed to the VE, ALJ Hanekamp described Pitts as having an eleventh grade education (Tr. 851).

Pitts claims that the ALJ's written opinion failed to define her educational level in regulatory terms as defined in 20 C.F.R. 404.1520(g).  Although Plaintiff is correct, she has not pointed to any regulation or case law which suggests that a failure of this nature amounts to reversible error. Accordingly, the Court declines to reverse the ALJ's decision on this ground.

Next, Pitts contends that it was error for the ALJ to describe her as having an eleventh grade education in his hypothetical question posed to the VE.  Despite Plaintiff's contention, the Court finds that the ALJ's articulation of her educational level was not reversible error.  While it is true that Plaintiff was enrolled in special education classes in the tenth grade, and tests from 1985 reflect

that she performed at a fifth grade level, thirty year old test results would not accurately reflect her actual comprehension levels at the time of the hearing (Tr. 429, 828).  *See* 20 C.F.R. § 404.1564(a) ("Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education.  Your daily activities . . . may also show that you have significant intellectual ability that can be used to work.").

The material issue the ALJ was assessing was the extent to which Plaintiff's seizures and other severe impairments impaired her ability to perform substantial gainful activity.  Since the time of Plaintiff's departure from the eleventh grade, she has been able to raise two children, care for her own personal needs, and maintain employment.  In fact, Plaintiff was administered and passed a test to obtain certification for her home health aide position (Tr. 845-46).   Someone with "[f]ormal schooling at a 6th grade level or less is generally considered a[s having] a marginal education." *Johnson v. Comm'r of Soc. Sec.*, 97 F. App'x 539, 541 (6th Cir. 2004) (internal quotations omitted). The ALJ limited the VE to identifying jobs that encompassed simple to moderately complex routine tasks.   Under these circumstances, the Court finds that the ALJ's description of Plaintiff's educational level was supported by the record, as Plaintiff has at least a marginal education.

### 3.  Transcript Omissions

Lastly, Pitts submits that remand is proper because portions of the transcript from the hearing were deemed inaudible and deprived Plaintiff of her "right to challenge the evidentiary basis for the ALJ's reliance on the vocational expert's testimony" (Pl.'s Br. at 14).   While the Court acknowledges that there are several instances where pertinent testimony exchanged between the parties is omitted, the Court nevertheless finds that the transcript is not so lacking as to warrant remand.  This case is distinguishable from other cases in which remand was necessitated due to

significant omissions in the administrative transcript.  For example, in *Mullen v. Sec'y of Health & Human Servs.*, 878 F. Supp. 682 (D. De. 1995), a district court ordered remand where three minutes of a twelve minute hearing were untranscribed, and there were additional instances of inaudible testimony in the remaining nine minutes.  Conversely, in the instant case, the overwhelming majority of Pitts's hearing is transcribed (Tr. 828-76).  Plaintiff's appeal of the ALJ's decision was not significantly prejudiced by these omissions from the transcript.  This is evident by Plaintiff's ability to adamantly contest the ALJ's reliance upon the VE's testimony, despite the missing portions of the transcript.  Additionally, the Court's review of the ALJ's decision was not hampered by these omissions. As a result, the Court declines to remand this case based on the deficiencies in the transcript.  In conclusion, the Court notes that it is not required to remand a case in search of a perfect opinion, particularly under circumstances where there is no reason to believe that remand will lead to a different result.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006).

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: May 19, 2011.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days of mailing of this notice.  Failure to file objections within the specified

23

time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).

24